IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION – CINCINNATI

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | Case No. 1:24-cr-117 |
| | : | |
| Plaintiff, | : | Judge Matthew W. McFarland |
| | : | |
| v. | : | |
| | : | |
| DAMEON CEASAR, | : | |
| | : | |
| Defendant. | : | |

## ORDER AND OPINION

This matter is before the Court on Defendant's Motion to Suppress (Doc. 35). The Government filed a Response in Opposition to Defendant's Motion to Suppress, to which Defendant filed a Reply in Support. (*See* Docs. 36, 37.) The Court held a hearing on the Motion on December 18, 2025. (*See* 12/18/2025 Minute Entry.) Thus, this matter is ripe for the Court's review. For the reasons below, Defendant's Motion to Suppress (Doc. 35) is **DENIED**.

## BACKGROUND

This case began with an investigation of Defendant Dameon Ceasar that started at least as far back as May 2024. (Transcript, Doc. 38, Pg. ID 101–02, 185–86.) On May 15, 2024, agents with Hamilton County, Ohio's Regional Narcotics Unit ("RENU") observed Defendant engaging in a hand-to-hand drug transaction during a controlled buy in which Defendant sold approximately a half ounce of cocaine. (*Id.* at Pg. ID 103–04, 117–18.) Then, on June 20, 2024, RENU agents attempted a traffic stop of Defendant, but he fled

from the agents at speeds exceeding 95-100 miles per hour in a 35 mile per hour zone. (*Id.* at Pg. ID 105-06, 152, 160-62, 186-88.) The agents abandoned their pursuit when they determined it was no longer safe to continue. (*Id.* at Pg. ID 152, 162.) The investigation of Defendant continued after the controlled buy, and agents surveilled him. (*Id.* at Pg. ID 104-05, 166-67, 188.) Through their research of Defendant's background, agents were aware of Defendant's criminal history, which includes felony convictions, and therefore knew that he was prohibited from possessing a firearm. (*Id.* at Pg. ID 189-90, 193.) On September 9, 2024, a RENU agent swore out three criminal complaints charging Defendant with drug trafficking, drug possession, and fleeing and eluding. (Transcript, Doc. 38, Pg. ID 106-07; Gov't Exs. 1, 2.)

The next day, RENU agents observed Defendant leave his residence and begin driving a white pickup truck. (Transcript, Doc. 38, Pg. ID 135, 137-38, 196-97.) Moments after Defendant's departure, agents executed a vehicle intercept. (*Id.* at Pg. ID 144-46.) During this maneuver, an unmarked truck stopped in front of Defendant's truck and an unmarked van rammed Defendant's truck from behind. (*Id.* at Pg. ID 140-42, 190-92.) The unmarked truck then rammed Defendant's truck in reverse, confining Defendant's truck and preventing another automobile pursuit. (*Id.*) Agents exited the unmarked van and approached Defendant's truck, and Defendant stepped out of his truck. (*Id.* at Pg. ID 169-70, 191-92.) The agents immediately brought Defendant to the ground, arresting him a few feet away from his truck. (*Id.*)

2

After arresting Defendant, the agents seized U.S. currency from his pants pocket. (Transcript, Doc. 38, Pg. ID 115, 170-71.) Agents then observed a firearm in plain view on the driver's side floorboard of Defendant's truck. (*Id.* at Pg. ID 115-16, 170.) An agent read Defendant his Miranda rights, and Defendant made statements to the agent. (*Id.* at Pg. ID 171.) Another agent took photos of Defendant's truck and secured his firearm. (*Id.* at Pg. ID 192.) Next, a RENU agent drove Defendant's truck to the Hamilton County Sheriff's District 1 Office. (*Id.* at Pg. ID 192-93.) Agents searched the truck and found narcotics in the center console. (*Id.* at Pg. ID 193-94.)

## LAW & ANALYSIS

Defendant moves to suppress all evidence obtained as a result of the stop, presumably including the evidence seized from his person and from his truck. (Motion to Suppress, Doc. 35, Pg. ID 82.) The arrest-based and search-based arguments are both grounded upon the Fourth Amendment, which protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. The Court will address each of Defendant's arguments in turn.

### I. Lawfulness of Defendant's Arrest

Defendant first argues that because the Government did not have an active arrest warrant at the time of his arrest, the evidence obtained as a result of the arrest should be excluded. (Motion to Suppress, Doc. 35, Pg. ID 86.) While a warrant is generally required to make an arrest, "a police officer may arrest without warrant one believed by the officer

3

upon reasonable cause to have been guilty of a felony." *United States v. Watson*, 423 U.S. 411, 417 (1976) (quoting *Carroll v. United States*, 267 U.S. 132, 156 (1925)). "The lawfulness of the arrest without warrant, in turn, must be based upon probable cause, which exists where the facts and circumstances within [the agents'] knowledge and of which they had reasonably trustworthy information [are] sufficient in themselves to warrant a man of reasonable caution in the belief that an offense has been or is being committed." *Ker v. California*, 374 U.S. 23, 34–35 (1963) (quotation omitted). "Whether probable cause exists is determined by the totality of the circumstances . . . analyzed from a law enforcement officer's perspective." *Marshall v. City of Farmington Hills*, 693 F. App'x 417, 423 (6th Cir. 2017) (citation omitted).

A warrantless arrest for a felony is lawful where the agent has probable cause, even if the arrest was delayed and the felony was committed outside the presence of the arresting agent. *See Watson*, 423 U.S. at 417–18. "The necessary inquiry, therefore, [is] not whether there was a warrant or whether there was time to get one, but whether there was probable cause for the arrest." *Id.*; *accord United States v. Dickens*, 748 F. App'x 31, 36 (6th Cir. 2018). And, the Sixth Circuit has found that "[r]easonable jurists could not debate th[e] conclusion" that "while information used to obtain a search warrant may go stale, the same is not true for information underlying an arrest warrant." *Guadarrama v. United States*, No. 16-6218, 2017 U.S. App. LEXIS 14975, at *6 (6th Cir. Feb. 13, 2017). Indeed, the passage of time may decrease the likelihood that evidence of a crime will be found during a search, but it does not affect the probable cause an agent has already obtained to make

4

an arrest, regardless of whether a warrant is sought. *See United States v. Sanchez*, No. 5:15-CR-50077, 2016 U.S. Dist. LEXIS 17115, at *8 (W.D. Ark. Feb. 9, 2016). Similarly, other circuits have explicitly held that the mere passage of time does not necessarily weigh against probable cause to arrest. *See, e.g., United States v. Haldorson*, 941 F.3d 284, 291–92 (7th Cir. 2019) (finding that officers had probable cause to make a warrantless arrest three weeks after a controlled buy); *United States v. Hinson*, 585 F.3d 1328, 1334 (10th Cir. 2009) (finding that officers had probable cause to make a warrantless arrest one month after a controlled buy); *see also Sanchez*, 2016 U.S. Dist. LEXIS 17115, at *8–9 (finding that officers had probable cause to make a warrantless arrest eleven months after a controlled buy).

Here, it appears from the record that while three criminal complaints were active at the time of Defendant's arrest, there was no active arrest warrant. Yet, the arresting RENU agents had probable cause to believe that Defendant committed a felony drug trafficking offense, as agents had observed him engaging in a hand-to-hand drug transaction during a controlled buy around four months earlier. Further, agents observed Defendant fleeing and eluding law enforcement during the attempted traffic stop in June 2024. It is true that the controlled buy and subsequent police pursuit took place around four months before Defendant's arrest, so there arguably could have been time for the agents to obtain an arrest warrant. But, turning to the critical question, the probable cause that agents obtained in observing Defendant's participation in the controlled buy and police pursuit still existed at the time of his arrest. *See Watson*, 423 U.S. at 417. Thus, a warrant was not required to execute a lawful arrest of Defendant.

5

Defendant also alleges that the vehicle intercept maneuver violated the policy of the Hamilton County Sheriff's Office. (Motion to Suppress, Doc. 35, Pg. ID 85.) But, Defendant does not provide, and the Court is unaware of, any precedent that requires suppression of evidence collected as a result of an arrest or search that violates department policy. As such, Defendant's arrest, supported by probable cause that Defendant had committed a felony, was lawful and does not warrant suppression.

## II. Lawfulness of the Search of Defendant's Truck

Defendant next argues that because he did not consent to the search of his vehicle, and because he was no longer within reaching distance of the vehicle at the time of his arrest, the evidence obtained from his truck should be excluded. (Motion to Suppress, Doc. 35, Pg. ID 86.) In general, the Fourth Amendment requires that police searches be performed pursuant to a valid search warrant. *Williams v. Maurer*, 9 F.4th 416, 431 (6th Cir. 2021). However, under the search incident to lawful arrest ("SILA") exception to the warrant requirement, "[p]olice may conduct a search of a vehicle incident to a lawful arrest when it is reasonable to believe evidence relevant to the crime of arrest might be found in the vehicle." *United States v. Alexander*, 954 F.3d 910, 917 (6th Cir. 2020) (quotation omitted). The SILA exception permits a search of both the person of the arrestee and the area within his control. *United States v. Robinson*, 414 U.S. 218, 224 (1973). The SILA exception is grounded in the need to disarm the suspect in order to take him into custody, as well as the need to preserve evidence for later use at trial. *Id.* at 234.

6

Under the SILA exception, police may search a motor vehicle incident to arrest if it is "reasonable to believe" that the vehicle contains evidence of the offense of arrest. *Arizona v. Gant*, 556 U.S. 332, 351 (2009). The Sixth Circuit has not defined the phrase "reasonable to believe" in the context of the SILA exception, but it has stated that "reasonable belief is a lesser standard than probable cause" and "is established by looking at common sense factors and evaluating the totality of the circumstances." *United States v. Pruitt*, 458 F.3d 477, 482, 485 (6th Cir. 2006). Other circuits have found that this "reasonable to believe" standard may be less than probable cause and more similar to the "reasonable suspicion" standard articulated in *Terry v. Ohio*, 392 U.S. 1, 21–22 (1968). *See United States v. Odoms*, No. 2:17-CR-210, 2018 U.S. Dist. LEXIS 96452, at *10 (S.D. Ohio June 8, 2018) (collecting cases). "A suspect can be arrested for multiple crimes, and '[w]hen that's the case, the police can search a vehicle incident to arrest if they have reason to believe that the vehicle contains evidence of any of the offenses of arrest. Nothing in *Gant* prohibits this.'" *Id.* (citing *United States v. Edwards*, 769 F.3d 509, 515 (7th Cir. 2014)). Here, the Government concedes that the conduct encompassing the criminal complaint for fleeing and eluding would not justify the search of Defendant's truck because the RENU agents could have no reasonable belief that evidence of that crime might be found therein. (Response, Doc. 36, Pg. ID 92.) That said, the agents could and did have a reasonable belief that evidence of Defendant's conduct encompassing the criminal complaints for drug possession and trafficking could be found in the truck. *See United States v. Johnson*, 627 F.3d 578, 584 (6th Cir. 2010) (finding that, after an arrest for

7

possession of a firearm, "police could have reasonably believed that ammunition or additional firearms were in the car or in containers in the car, especially in the passenger area searched by police that was formerly occupied by [the defendant]"); *United States v. Bobo*, No. 2:24-CR-20200, 2025 U.S. Dist. LEXIS 135591, at *15 (W.D. Tenn. July 16, 2025) (concluding that "it was permissible for the officers to search [the defendant's] vehicle for evidence related to the drug possession, the crime of arrest"). The reasonable belief here was bolstered by the discovery of U.S. currency on Defendant's person during the time of his arrest, as well as the agents' observation of a firearm in plain view on the driver's side floorboard of his truck. *See United States v. Gibson*, No. 3:12-CR-72, 2013 U.S. Dist. LEXIS 136692, at *16 (S.D. Ohio Sep. 24, 2013) (finding that an officer possessed the requisite reasonable belief to search a defendant's vehicle incident to an arrest for drug trafficking after the discovery of $5,605 in cash in the defendant's pocket corroborated the officer's preexisting probable cause for arrest).

Defendant argues that because he was no longer within reaching distance of the truck at the time of the search and the RENU agents had not obtained an arrest warrant, there was no arresting offense of which agents could find evidence in the truck. (Motion to Suppress, Doc. 35, Pg. ID 86.) This argument ignores the fact that the agents arrested Defendant for drug trafficking and possession, as well as fleeing and eluding, prior to searching Defendant's truck. Indeed, an agent had sworn out three criminal complaints charging Defendant with theses offenses prior to his arrest. And, Defendant does not provide, and the Court is unaware of, any precedent that mandates an arrest warrant for

8

the SILA exception to apply. Thus, because the SILA and automobile exceptions apply here, the search of the truck was lawful, and suppression is not warranted.

The Government also contends that the agents knew Defendant was prohibited from possessing firearms at the time they observed the firearm within the vehicle. (Transcript, Doc. 38, Pg. ID 189, 193, 204–06.) "Under the automobile exception, police officers may conduct a warrantless search of a vehicle if they have probable cause to believe that the vehicle contains evidence of a crime." *United States v. Smith*, 510 F.3d 641, 647 (6th Cir. 2007) (quotation omitted); *see also United States v. Moore*, 487 F. Supp. 3d 652, 660 (S.D. Ohio 2020) (emphasizing that the automobile exception applies to "evidence of *any* offense, not necessarily the offense of arrest"). Here, the discovery of the firearm in plain view, coupled with the agents' knowledge of Defendant's past felony convictions, would independently open the door to a search of the vehicle under the automobile exception. *See United States v. Pigg*, No. 1:17-CR-5, 2019 U.S. Dist. LEXIS 21814, at *19–20 (M.D. Tenn. Feb. 11, 2019) (applying automobile exception when officer knew that the defendant was a felon and observed a firearm in the vehicle); *United States v. Matthews*, 422 F. Supp. 3d 1235, 1253 (W.D. Ky. 2019) ("The officers were therefore justified in believing that there could be other guns in the car, and the search of the vehicle was valid under the automobile exception.").

## CONCLUSION

For the foregoing reasons, Defendant's Motion to Suppress (Doc. 35) is **DENIED**.

**IT IS SO ORDERED.**

9

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO

By: *Matthew W. McFarland*
JUDGE MATTHEW W. McFARLAND